**WYNNE LAW FIRM**
Edward J. Wynne (SBN 165819)
ewynne@wynnelawfirm.com
George R. Nemiroff (SBN 262058)
gnemiroff@wynnelawfirm.com
80 E. Sir Francis Drake Blvd., Suite 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415) 461-3900

**CLAPP LEGAL APC**
James F. Clapp (SBN 145814)
jclapp@clapplegal.com
Jamie N. Herrick (SBN 356349)
jherrick@clapplegal.com
701 Palomar Airport Rd., Ste 300
Carlsbad, CA 92011
Telephone: (760) 209-6565
Facsimile: (760) 209-6565

Attorneys for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| ROBERT SCHEVEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPTIMA TAX RELIEF LLC, a Delaware limited liability company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:25-cv-01887<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Scheven ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint and alleges the following against Defendant Optima Tax Relief LLC ("Optima" or "Defendant").

## INTRODUCTION

1. Optima advertises itself as "the nation's leading tax resolution firm, having resolved over one billion dollars in tax liabilities for our clients."[1]

2. Plaintiff and thousands of other consumers entrusted Optima with their personal information when they retained Optima for their tax resolution services. This personal information included names, contact information, social security numbers, government-issued identification numbers, and bank account numbers ("Private Information").

3. Optima promises consumers on its website that "the privacy and security of your personal and financial information is our highest priority."[2] Despite Optima's repeated reassurances that it will protect its customers' Private Information, Optima failed to do so.

4. Instead, on August 15, 2025, Optima announced that an unauthorized third party had gained access to Optima's network and accessed and downloaded the Private Information of several thousand customers (the "Data Breach")[3] In allowing the Data Breach to occur, Optima failed to safeguard the Private Information of its customers and failed to implement necessary security measures to prevent this information from being stolen, in violation of California law.

## PARTIES

### A. Plaintiff

5. Plaintiff Robert Scheven is a citizen and resident of the State of California, who had his Private Information stolen in the Data Breach.

[1] https://optimataxrelief.com/about-us/ (accessed 8/20/2025)

[2] https://optimataxrelief.com/about-us/privacy/ (accessed 8/20/2025)

[3] See Optima's data breach notice, filed with the California Attorney General on August 15, 2025.

6. In deciding to retain Optima for his tax resolution needs, Plaintiff reasonably expected that Optima would safeguard his Private Information. Plaintiff would not have hired Optima if he knew his Private Information would be at risk.

7. As a result of the Data Breach, Plaintiff has suffered increased anxiety due to his loss of privacy and fear that cybercriminals will access, use and sell Plaintiff's Private Information.

8. Plaintiff has suffered injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Private Information, in combination with his name, being placed in the hands of unauthorized third parties/criminals.

9. Plaintiff has a continuing interest in ensuring that his Private Information, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**B. Defendant Optima Tax Relief LLC**

10. Defendant Optima Tax Relief LLC is a Delaware limited liability company with its principal place of business and headquarters located at 6 Hutton Centre Dr. Suite 200, Santa Ana, CA 92707, from where its officers direct, control, and coordinate the corporation's activities.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C § 1332, because (1) the proposed class consists of thousands of consumers throughout California and the United States; (2) diversity of citizenship exists, as evidenced by Defendant's filings with the Texas, Massachusetts, and Maine Attorneys General, which indicate at least 341 Class Members are citizens of Texas[4], 56 Class Members are citizens of

[4] https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (accessed 8/25/2025)

Massachusetts[5], and 5 Class Members are citizens of Maine[6], whereas Defendant is domiciled in California and Delaware, and (3) the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

12. This Court has personal jurisdiction over Defendant because it is headquartered and does business in this jurisdiction. Moreover, the claims of Plaintiff and the Class arise out of Defendant's business activity in California.

13. Venue is proper in this Court because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from Orange County.

## FACTUAL ALLEGATIONS

### A. The Data Breach

14. At all material times, Optima failed to maintain proper security measures despite its promises of safety and security to consumers and despite its substantial financial resources and ability to do so.

15. By August 15, 2025, Optima determined that an unauthorized third party had gained access to its systems and acquired the personal information of certain customers more than three months earlier, between May 1 and 6, 2025.[7]

16. In its notice, Optima does not disclose how many customers were affected by the Data Breach, leaving consumers to speculate whether it is likely that their Private Information has been compromised and without clear instruction on what they can do to protect themselves and mitigate their losses.

### B. Optima Failed to Follow Industry Standards

17. Companies like Optima that have access to highly sensitive data such as the social security numbers must comply with the industries' best practices, which require implementing thorough analyses, regular audits and risk assessments,

---

5 https://www.mass.gov/doc/data-breach-report-2025/download (accessed 8/25/2025)

6 https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/6861f67f-29cd-41fe-a612-bfc03b222a37.html (accessed 8/25/2025)

7 *Id.*

penetration testing, proactively identifying and addressing weaknesses in the company's systems, clear policies and procedures, and, most importantly, implementing strong access controls and authentication measures (such as biometric authentication, encryption, multifactor authentication). Optima, however, has not implemented these protocols resulting in its employee/imposter gaining access to the Class Members' Private Information.

### C. Impact of Data Breach on Consumers

18. Plaintiff and the Class have suffered actual harm as a result of Optima's conduct. Private Information is a valuable property right.[8] Business models that depend on personal data are becoming increasingly common, and "firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[9] It is estimated that American companies have spent over $19 billion on acquiring personal data of consumers in 2018.[10] It is so valuable to identity thieves that once Private Information has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

19. Plaintiff and other Class Members have had their Private Information disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

20. As a result of its real value, identity thieves and cyber criminals have

---

[8] Marc van Lieshout, *The Value of Personal Data*, IFIP ADVANCES IN INFORMATION AND COMMUNICATION TECHNOLOGY (May 2015), https://www.researchgate.net/publication/283668023_%20The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible...") (last accessed March 25, 2025).

[9] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en (last accessed March 25, 2025).

[10] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last accessed March 25, 2025).

openly posted credit card numbers, Social Security numbers, and other sensitive information directly on various Internet websites, making the information publicly available. The information exposed in the data breach can thus be aggregated, becoming more valuable to thieves and more damaging to victims.

21. Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[11] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web. Criminals can also purchase access to entire company data breaches.[12]

22. Consumers place a high value on the privacy of that data. Researchers shed light on how many consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[13]

23. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

24. Plaintiff and members of the Class must immediately devote time, energy, and money to: (1) closely monitor their bills, records, and credit and financial accounts; (2) change login and password information on any sensitive account even more frequently than they already do; (3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not

---

[11] Anita George, *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs*, DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed March 25, 2025).

[12] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed March 25, 2025).

[13] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH (June 2011), https://www.jstor.org/stable/23015560?seq=1 (last accessed March 25, 2025).

being targeted in a social engineering or spear phishing attack; and (4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

25. Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiffs and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, because of Optima's conduct. Further, the value of Plaintiffs' and Class Members' Private Information has been diminished by its exposure in the data breach.

**D. Out of Pocket Costs**

26. Plaintiff is now forced to research and subsequently acquire credit monitoring and reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff anticipates spending out of pocket expenses to pay for these services.

27. Optima also used Plaintiff's Private Information for profit and continued to use Plaintiff's Private Information to target Plaintiff, and share his information with various third parties, or to improve its marketing to other third parties for Optima's own benefit.

**E. Threat of Financial Fraud**

28. The data breach has significantly increased the risk of financial fraud for affected customers. With access to sensitive financial information such as bank account numbers, cybercriminals now have the tools to conduct unauthorized transactions or engage in financial identity theft.

29. Customers whose information was compromised in the Data Breach face an elevated risk of unauthorized money transfers or account takeovers, and this was the proximate consequence of Optima's failure to secure its customers' Private Information.

## CLASS ACTION ALLEGATIONS

30. Pursuant to California Code of Civil Procedure section 382, Plaintiff seeks certification of the following class:

**Nationwide Class:** "All individuals in the United States whose Private Information was disclosed or stolen in the August 15, 2025 data breach involving customers of Optima."

**California Subclass:** "All members of the Nationwide Class who resided in California as of August 15, 2025."

31. This class definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

32. The Class is comprised of thousands of consumers throughout California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

33. There is a well-defined community of interest in the questions of law and fact involved and affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

a. Whether Class members' Private Information was accessed, compromised, or stolen in the breach;

b. Whether Defendant failed to notify the public of the breach in a timely and adequate manner;

c. Whether Defendant knew or should have known that its systems were vulnerable to a data breach;

d. Whether Defendant adequately addressed the vulnerabilities that allowed for the data breach;

e. Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

f. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

g. How and when Defendant actually learned of the data breach;

h. Whether hackers obtained Class Members' Private Information via the data breach; and,

i. Whether, as a result of Defendant's conduct, Plaintiffs and the Class are entitled to damages and relief;

34. Plaintiff's claims are typical of the claims of the proposed Class, as Plaintiffs and the members of the Class were harmed by Defendant's uniform unlawful conduct.

35. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

36. Plaintiff and the Class have suffered injury in fact as a result of Defendant's false, deceptive, and misleading representations.

37. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

38. The litigation and resolution of the Class's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

39. Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

40. Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Given the nature of individual Class Members' claims, few, if any, could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class Members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

41. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

42. Defendant owed Plaintiff and the Nationwide Class Members a duty to exercise reasonable care in collecting, maintaining, and safeguarding their Private Information. This duty included, but was not limited to, maintaining adequate security measures, complying with industry standards, implementing procedures to detect and prevent unauthorized access, and safeguarding consumers' sensitive personal and financial data.

43. Defendant breached its duty by, among other things: failing to implement and maintain adequate data security practices and procedures; failing to timely detect the Data Breach; failing to adequately disclose the Data Breach to affected consumers; and misrepresenting its data protection practices to Plaintiff and the Nationwide Class Members.

44. As a direct and proximate result of Defendant's negligence, Plaintiff's and the Nationwide Class Members' Private Information was compromised, causing them to suffer damages, including, but not limited to, increased risk of identity theft, loss of privacy, out-of-pocket expenses, and loss of the value of their Private Information.

45. Plaintiff and the Nationwide Class Members are therefore entitled to compensatory damages, injunctive relief, and all other relief permitted by law.

## SECOND CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

46. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

47. In connection with obtaining products and services from Defendant, Plaintiff and the Nationwide Class Members provided their Private Information to Defendant with the mutual understanding and intent that Defendant would use reasonable measures to protect that information, safeguard it from unauthorized access, and provide prompt and adequate notice of any breach.

48. Defendant accepted possession of Plaintiff's and the Nationwide Class Members' Private Information and, in so doing, entered into implied contracts whereby Defendant agreed to: (1) use such information for business purposes only; (2) safeguard the information with reasonable data security measures; (3) prevent unauthorized disclosure of the information; and (4) notify Plaintiff and the Nationwide Class Members promptly in the event of a data breach.

49. Plaintiff and the Nationwide Class Members fully performed their obligations under the implied contracts by providing their Private Information and paying for Defendant's products and services.

50. Defendant breached the implied contracts by failing to safeguard and protect the Private Information, by allowing unauthorized access to it, and by failing

to timely notify Plaintiff and the Nationwide Class Members of the Breach.

51. As a direct and proximate result of Defendant's breach, Plaintiff and the Nationwide Class Members suffered damages as alleged herein, including the costs of mitigating potential identity theft, loss of privacy, and diminution in the value of their Private Information.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

52. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

53. Defendant has been unjustly enriched as a result of its wrongful conduct. Specifically, Defendant collected and retained money from Plaintiff and the Nationwide Class Members for tax resolution services while failing to provide the reasonable data security protections it promised and that consumers reasonably expected.

54. By retaining payments while failing to secure Private Information, Defendant obtained benefits that it would be unjust for Defendant to retain. Defendant also benefitted by using and monetizing Plaintiff's and the Nationwide Class Members' Private Information for its own business purposes while failing to safeguard that information.

55. As a result, Defendant has been unjustly enriched at the expense of Plaintiff and the Nationwide Class. Principles of equity and good conscience require Defendant to disgorge its unjust gains, including restitution of monies wrongfully obtained and the imposition of a constructive trust for the benefit of Plaintiff and the Nationwide Class Members.

56. Plaintiff and the Nationwide Class Members seek restitution, disgorgement, and all other relief that this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**(Cal. Civ. Code Section 1798.150, *et seq*.)**
**(On Behalf of Plaintiff and the California Subclass)**

57. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

58. Defendant is a business under the CCPA because it has gross annual revenues in excess of twenty-five million dollars.[14] Defendant also holds itself as a business under the CCPA and provides various disclosures regarding its collection and use of personal information within its privacy notice.

59. Defendant collects consumers' personal information as defined in Cal. Civ. Code § 1798.140.

60. Plaintiff is a "consumer" under Cal. Civ. Code § 1798.140(i) because he is a California resident whose unredacted sensitive and personal information has been disclosed by Defendant as a result of unauthorized access, exfiltration, theft, and Defendant's failure to maintain reasonable security procedures appropriate to the nature of the information.

61. Specifically, Defendant violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and the California Subclass Members' nonencrypted Private Information from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

62. Defendant has a duty to implement and maintain reasonable security procedures and practices to protect Plaintiff's and California Subclass Members' Private Information. As detailed herein, Defendant failed to do so.

63. As a direct and proximate result of Defendant's conduct, Plaintiff's and the California Subclass Members' Private Information, including, names,

[14] https://growjo.com/company/Optima_Tax_Relief (accessed 8/22/25)

contact information dates of birth, Social Security numbers, government-issued identification documents, bank account numbers, and transaction information., was subjected to unauthorized access and exfiltration, theft, or disclosure.

64. Plaintiff and the California Subclass Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards customers' Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold customers' Private Information, including Plaintiffs' and the California Subclass Members' Private Information. Plaintiff and the California Subclass Members have an interest in ensuring that their Private Information is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information, as evidenced by the Data Breaches.

65. As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information to protect the Private Information under the CCPA.

66. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant and third parties with similar inadequate security measures.

**<u>FIFTH CAUSE OF ACTION</u>**
**VIOLATION OF THE CUSTOMER RECORDS ACT ("CRA")**
**(Cal. Civ. Code §§ 1798.80, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

67. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

68. At all relevant times, Defendant was a "business" that owns or licenses computerized data that includes personal information, as defined by Cal. Civ. Code § 1798.81.5(d)(1). The Private Information at issue here includes "personal information" as defined in Cal. Civ. Code § 1798.80(e).

69. The CRA requires businesses to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect it from unauthorized access, destruction, use, modification, or disclosure. Cal. Civ. Code § 1798.81.5(b).

70. Defendant failed to implement and maintain such reasonable security procedures and practices. As a result of Defendant's violation of § 1798.81.5, Plaintiff's and the California Subclass Members' personal information was stolen by unauthorized cybercriminals.

71. The CRA also requires that any business that maintains personal information that has been subject to a security breach must disclose the breach in the most expedient time possible and without unreasonable delay. Cal. Civ. Code § 1798.82(a). Defendant failed to disclose the Data Breach to Plaintiff and the California Subclass Members without unreasonable delay, waiting more nearly three months after discovery to begin individual notifications.

72. As a direct and proximate result of Defendant's violations of the CRA, Plaintiff and the California Subclass Members have suffered damages as alleged herein and seek all remedies available under Cal. Civ. Code §§ 1798.84(b), including compensatory damages, injunctive relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request the Court grant relief on all causes of action as follows:

1. That the Court determines that this Action may be maintained as a Class Action, that Plaintiffs be named as Class Representative of the Class, that the undersigned be named as Class Counsel of the Class, and that notice of this Action be given to Class Members;

2. That the Court enter an order declaring that Defendant's actions, as set forth in this Complaint, violate the law set forth above;

3. That the Court enter an order providing declaratory and injunctive relief;

4. That the Court award Plaintiff and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

5. That the Court issue appropriate equitable and any other relief against Defendant to which Plaintiff and the Class are entitled;

6. That the Court award Plaintiff and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

7. That the Court award Plaintiff and the Class their reasonable attorneys' fees and costs of suit; and,

8. That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff respectfully demands a trial by jury for all claims.

DATED: August 25, 2025

Respectfully submitted,

By: ____________________________

**WYNNE LAW FIRM**
Edward J. Wynne (SBN 165819)
George R. Nemiroff (SBN 262058)
80 E. Sir Francis Drake Blvd., Suite 3G
Larkspur, CA 94939
Tel: (415) 461-6400
Fax: (415) 461-3900
ewynne@wynnelawfirm.com
gnemiroff@wynnelawfirm.com

*Counsel for Plaintiff and the Putative Class*